## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| BARBARA CHANDLER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) **Case No.** |
|  | ) |
| Plaintiff, | ) ) |
|  | ) |
| v. | ) **COMPLAINT FOR VIOLATION OF** ) **THE FEDERAL SECURITIES LAWS** |
|  | ) |
| ULTA BEAUTY, INC., MARY N. DILLON, and SCOTT M. SETTERSTEN, | ) **DEMAND FOR JURY TRIAL** ) ) |
|  | ) |
| Defendants. | ) ) |

### CLASS ACTION COMPLAINT

Plaintiff Barbara Chandler ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Ulta Beauty, Inc. ("Ulta" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Ulta securities between

March 30, 2016 and February 23, 2018, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Ulta Beauty, Inc. operates a chain of beauty stores. The Company offers cosmetics, fragrance, skin and hair care products, and salon services, and serves customers throughout the United States.

3.      Founded in 1990, the Company was formerly known as "Ulta Salon, Cosmetics & Fragrance, Inc." and changed its name to "Ulta Beauty, Inc." in January 2017.  Ulta is based in Bollingbrook, Illinois and its stock trades on the NASDAQ Global Select market ("NASDAQ") under the ticker symbol "ULTA."

4.      Throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (i) the Company was engaged in the widespread practice of repackaging returned cosmetics and re-shelving them alongside unblemished products to sell at full retail price; and (ii) that as a result of the foregoing, Ulta's public statements were materially false and misleading at all relevant times.

5.      On February 9, 2018, at market close, media outlets reported that a consumer class action lawsuit had been filed against Ulta, alleging that the Company engaged in the "widespread and surreptitious" practice of repacking returned cosmetics and re-shelving them alongside unblemished products to sell at full price.  According to the lawsuit, "dozens of other

current and former Ulta employees from retail locations all over the country confirmed that substantially similar practices also occurred at the Ulta stores where they worked."

6.      On this news, Ulta's share price fell $9.07, or 4.15%, to close at $209.48 on February 12, 2018, the following trading day.

7.      Then, on February 23, 2018, *CBS News* published a story on its website entitled "Former Ulta Beauty employee says she felt pressured to resell used products," reporting on statements, initially made on Twitter by at least one former Ulta employee, to the effect that Ulta store managers frequently pressured the Company's employees to clean and resell used products.  The article stated in relevant part:

> "We were told by managers to repackage / reseal the item and put it back on the shelf" the social media post reads. "They would resell EVERYTHING. (makeup, hair care, skincare, fragrance, hair tools, etc.)," the associate wrote in another post.

> The former employee included photos of products. In one example, she alleges that Ulta employees would clean a used foundation stick with a Q-Tip and resell it. Other people joined in, posting their experiences from around the country.

> "I felt duped," Brown said. "For somebody to come forward like that is a pretty big deal, it sends a big red flag in my book."

> ***

> But former Ulta Beauty store operations manager Brittany Ludwig says at one store she saw them "cleaning" lip products and eye shadows.

> At another, she said, shampoos, lotions, and other items in bottles were put back on the shelf.

> She says some of that she did herself because higher-level managers pressured the stores to keep the dollar amount for damaged or returned goods down.

> "We had other managers come in from other stores and they were saying 'OK, yeah, you need to clean all these returns, you need to clean this, this is how you're going to get your numbers down,' and it was all a numbers game," she said. "I don't feel so great about doing it now, but at that time that's what I was told to do my job."

8. On this *CBS News* report, Ulta's share price fell $8.18 or 3.94%, to close at $198.93 on February 26, 2018.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Ulta's principal executive offices are located within this Judicial District.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff, as set forth in the attached Certification, acquired Ulta securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant Ulta is headquartered in Illinois, with principal executive offices located at 1000 Remington Boulevard, Suite 120, Bolingbrook, Illinois 60440. The Company's stock trades on the NASDAQ under the ticker symbol "ULTA."

16.     Defendant Mary N. Dillon ("Dillon") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Director.

17.     Defendant Scott M. Settersten ("Settersten") has served at all relevant times as the Company's Chief Financial Officer ("CFO"), Treasurer and Assistant Secretary.

18.     The Defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

19.     The Individual Defendants possessed the power and authority to control the contents of Ulta's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of the Company's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with the Company, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

20.     The Company and the Individual Defendants are sometimes referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

21.     Ulta Beauty, Inc. operates a chain of beauty stores. The Company offers cosmetics, fragrance, skin and hair care products, and salon services. Ulta Beauty serves customers throughout the United States.

### Materially False and Misleading Statements Issued During the Class Period

22.     The Class Period begins on March 30, 2016, when Ulta filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended January 30, 2016 (the "2015 10-K").  For the quarter, Ulta reported net income of $107.82 million or $1.69 per diluted share, on revenue of $1.26 billion, compared to net income of $87.26 million, or $1.35 per diluted share, on revenue of $1.04 billion for the same period in the prior year.  For fiscal year 2015, Ulta reported net income of $257.14 million, or $3.98 per diluted share, on revenue of $3.24 billion, compared to net income of $202.85 million, or $3.15 per diluted share, on revenue of $2.67 billion for fiscal year 2014.

23.     In the 2015 10-K, the Company stated in pertinent part:

*Offer relevant, innovative and often exclusive products that excite our guests.*  Our strategy is to continue to partner with existing and new key vendor partners to bring new and exclusive products to delight our guests and to introduce new brands both in-store and online. We regularly add new brands across product categories, especially in prestige cosmetics, currently the beauty industry's highest growth category. We continue to increase the presence of prestige brands and boutiques in our stores. We are also refining and growing the Ulta Beauty Collection, our private label products. Our private label strategy could include partnerships or acquisitions to create more exclusive brands for Ulta Beauty in the future.

*** 

All of our associates participate in an interactive new-hire orientation through which each associate becomes acquainted with Ulta Beauty's mission, vision and values. Training for new store managers, prestige beauty advisors and sales associates familiarizes them with our beauty products and services, opening and

6

closing routines, guest service expectations, loss prevention practices, our policies and procedures and our culture. We provide continuing education to salon professionals and retail associates throughout their careers at Ulta Beauty. Our learning management system allows us to provide ongoing training to all associates to continually enhance their product knowledge, technical skills and guest service expertise. In contrast to the sales teams at traditional department stores, our retail sales teams are not commissioned. Our prestige beauty advisors are trained to work across all prestige lines and within our prestige boutiques, where guests can receive makeup demonstrations, skin analysis and assistance in selecting the products and services that suit them best.

24.     The 2015 10-K contained signed certifications pursuant to the Sarbanes Oxley Act of 2002 ("SOX") by the Individual Defendants, stating that the information contained in the 2015 10-K "fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report."

25.     On June 2, 2016, Ulta filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended April 30, 2016 (the "Q1 10-Q 2016"). For the quarter, Ulta reported net income of $91.98 million, or $1.45 per diluted share, on revenue of $1.07 billion, compared to net loss of $66.95 million, or $1.04 per diluted share, on revenue of $868.12 million for the same period in the prior year.

26.     The Q1 10-Q 2016 contained signed certifications pursuant to SOX by the Individual Defendants, stating that the information contained in the Q1 10-Q 2016 "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

27.     On August 25, 2016, Ulta filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended July 30, 2016 (the "Q2 10-Q 2016"). For the quarter, Ulta reported net income of $90 million, or $1.43 per

diluted share, on revenue of $1.06 billion, compared to net income of $74.17 million, or $1.15 per diluted share, on revenue of $877 million for the same period in the prior year.

28.     The Q2 10-Q 2016 contained signed certifications pursuant to SOX by the Individual Defendants, stating that the information contained in the Q2 10-Q 2016 "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

29.     On December 1, 2016, Ulta filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended October 29, 2016 (the "Q3 10-Q 2016").  For the quarter, Ulta reported net income of $87.56 million, or $1.40 per diluted share, on revenue of $1.13 billion, compared to net income of $71.17 million, or $1.11 per diluted share, on revenue of $910.70million for the same period in the prior year.

30.     The Q3 10-Q 2016 contained signed certifications pursuant to SOX by the Individual Defendants, stating that the information contained in the Q3 10-Q 2016 "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

31.     On March 28, 2017, Ulta filed an annual report on Form 10-K with the SEC, announcing the Company's financial and operating results for the quarter and fiscal year ended January 28, 2017 (the "2016 10-K").  For the quarter, Ulta reported net income of $140.22 million or $2.24 per diluted share, on revenue of $1.58 billion, compared to net income of $107.82 million or $1.69 per diluted share, on revenue of $1.26 billion for the same period in the prior year.  For fiscal year 2016, Ulta reported net income of $320.01 million, or $4.98 per

diluted share, on revenue of $3.92 billion, compared to net income of $257.14 million, or $3.98 per diluted share, on revenue of $3.24 billion for fiscal year 2015.

32.     In the 2016 10-K, the Company stated, in relevant part:

All of our associates participate in an interactive new-hire orientation through which each associate becomes acquainted with Ulta Beauty's mission, vision and values. Training for new store managers, prestige beauty advisors and sales associates familiarizes them with our beauty products and services, opening and closing routines, guest service expectations, loss prevention practices, our policies and procedures and our culture. We provide continuing education to salon professionals and retail associates throughout their careers at Ulta Beauty. Our learning management system allows us to provide ongoing training to all associates to continually enhance their product knowledge, technical skills and guest service expertise. In contrast to the sales teams at traditional department stores, our retail sales teams are not commissioned. Our prestige beauty advisors are trained to work across all prestige lines and within our prestige boutiques (sets of custom designed fixtures configured to prominently display certain prestige brands within our stores), where guests can receive makeup demonstrations, skin analysis and assistance in selecting the products and services that suit them best.

33.     The 2016 10-K contained signed certifications pursuant to the SOX by the Individual Defendants, stating that the information contained in the 2016 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

34.     On June 1, 2017, Ulta filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended April 29, 2017 (the "Q1 10-Q 2017"). For the quarter, Ulta reported net income of $128.22 million, or $2.05 per diluted share, on revenue of $1.31 billion, compared to net income of $91.98 million, or $1.45 per diluted share, on revenue of $1.07 billion for the same period in the prior year.

35.     The Q1 10-Q 2017 contained signed certifications pursuant to SOX by the Individual Defendants, stating that the information contained in the Q1 10-Q 2017 "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make

the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

36.     On August 31, 2017, Ulta filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended July 29, 2017 (the "Q2 10-Q 2017"). For the quarter, Ulta reported net income of $114.19 million, or $1.83 per diluted share, on revenue of $1.28 billion, compared to net income of $90 million, or $1.43 per diluted share, on revenue of $1.06 billion for the same period in the prior year.

37.     The Q2 10-Q 2017 contained signed certifications pursuant to SOX by the Individual Defendants, stating that the information contained in the Q2 10-Q 2017 "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

38.     On November 30, 2017, Ulta filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended October 28, 2017 (the "Q3 10-Q 2017").  For the quarter, Ulta reported net income of $104.65 million, or $1.70 per diluted share, on revenue of $1.34 billion, compared to net income of $87.56 million, or $1.40 per diluted share, on revenue of $1.13 billion for the same period in the prior year.

39.     The Q3 10-Q 2017 contained signed certifications pursuant to SOX by the Individual Defendants, stating that the information contained in the Q3 10-Q 2017 "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."

40.     Ulta Beauty has expressly represented that the Company's return merchandise policy "does not permit the resale of used, damaged or expired products," stating on its website:

**Returned Merchandise Policy**

We take protecting the integrity of the products we sell very seriously. ***Ulta Beauty's policy does not permit the resale of used, damaged or expired products. Our policies, training and procedures are aimed at ensuring that only the highest quality products are sold in our stores and online.*** Our associates are trained to catalogue and then properly dispose of any returned items that have been used, damaged or expired. For more information, please click here.

(Emphasis added.)

41.     The statements referenced in ¶¶ 22-40 were materially false and misleading because defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, defendants made false and/or misleading statements and/or failed to disclose that: (i) the Company was engaged in the widespread practice of repackaging returned cosmetics and re-shelving them alongside unblemished products to sell at full retail price; and (ii) that as a result of the foregoing, Ulta's public statements were materially false and misleading at all relevant times.

### The Truth Begins to Emerge

42.     On February 9, 2018, at market close, media outlets reported that a consumer class action lawsuit had been filed against Ulta, alleging that the Company engaged in the "widespread and surreptitious" practice of repacking returned cosmetics and re-shelving them alongside unblemished products to sell at full price. According to the lawsuit, "dozens of other current and former Ulta employees from retail locations all over the country confirmed that substantially similar practices also occurred at the Ulta stores where they worked."

43.     On this news, Ulta's share price fell $9.07, or 4.15%, to close at $209.48 on February 12, 2018, the following trading day.

44.     Then, on February 23, 2018, *CBS News* published a story on its website entitled "Former Ulta Beauty employee says she felt pressured to resell used products," reporting on statements, initially made on Twitter by at least one former Ulta employee, to the effect that Ulta store managers frequently pressured the Company's employees to clean and resell used products. The article stated in relevant part:

> "We were told by managers to repackage / reseal the item and put it back on the shelf" the social media post reads. "They would resell EVERYTHING. (makeup, hair care, skincare, fragrance, hair tools, etc.)," the associate wrote in another post.

> The former employee included photos of products. In one example, she alleges that Ulta employees would clean a used foundation stick with a Q-Tip and resell it. Other people joined in, posting their experiences from around the country.

>  "I felt duped," Brown said. "For somebody to come forward like that is a pretty big deal, it sends a big red flag in my book."

>                                        ***

> But former Ulta Beauty store operations manager Brittany Ludwig says at one store she saw them "cleaning" lip products and eye shadows.

> At another, she said, shampoos, lotions, and other items in bottles were put back on the shelf.

> She says some of that she did herself because higher-level managers pressured the stores to keep the dollar amount for damaged or returned goods down.

> "We had other managers come in from other stores and they were saying 'OK, yeah, you need to clean all these returns, you need to clean this, this is how you're going to get your numbers down,' and it was all a numbers game," she said. "I don't feel so great about doing it now, but at that time that's what I was told to do my job."

45.     On this *CBS News* report, Ulta's share price fell $8.18 or 3.94%, to close at $198.93 on February 26, 2018.

46.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Ulta securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, Ulta securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Ulta or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

50.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Ulta;

- whether the Individual Defendants caused Ulta to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Ulta securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

53.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Ulta securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Ulta securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

54.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

56.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Ulta securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Ulta securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

59.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Ulta securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Ulta's finances and business prospects.

60.     By virtue of their positions at Ulta, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants

acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

61.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Ulta, the Individual Defendants had knowledge of the details of Ulta's internal affairs.

62.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Ulta. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Ulta's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Ulta securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Ulta's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Ulta securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

63. During the Class Period, Ulta securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Ulta securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Ulta securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Ulta securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

64. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

66. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. During the Class Period, the Individual Defendants participated in the operation and management of Ulta, and conducted and participated, directly and indirectly, in the conduct of Ulta's business affairs. Because of their senior positions, they knew the adverse non-public information about Ulta's misstatement of income and expenses and false financial statements.

68. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Ulta's financial condition and results of operations, and to correct promptly any public statements issued by Ulta, which had become materially false or misleading.

69. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Ulta disseminated in the marketplace during the Class Period concerning Ulta's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Ulta to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Ulta within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Ulta securities.

70. Each of the Individual Defendants, therefore, acted as a controlling person of Ulta. By reason of their senior management positions and/or being directors of Ulta, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Ulta to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Ulta and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

71.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Ulta.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  March 2, 2018

Respectfully submitted,

*/s/Jeremy A. Lieberman*
**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
        ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505

Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ
& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*