# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BARBARA CHANDLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18-cv-1577 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| ULTA BEAUTY, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This is a securities class action against Ulta Beauty, Inc. ("Ulta" or the "Company"), Mary N. Dillon, and Scott M. Settersten (collectively, the "Defendants"). Four movants sought appointment as lead plaintiff and lead counsel in this matter: (1) Daniel Hurlbut, Marlene Hurlbut, Cynthia Busse, and Lawrence Banker (collectively, the "Hurlbut Group") [14; 32][1], (2) Asha Ullah, Ahmad Ullah, and Dr. Vaijinath Chakote (collectively, the "Ullah Group") [22], (3) Iron Workers Local 580 (the "IW 580")[2] [23], and (4) Lehigh County Employees Retirement Fund [19]. Lehigh County Employees Retirement Fund filed a motion to withdrawal [40] its motion for appointment as lead plaintiff and approval of selection of lead counsel. Accordingly, Lehigh County Employees Retirement Fund's motion to withdraw [40] is granted and its motion for appointment as lead plaintiff and approval of selection of lead counsel [19] is stricken. For

---

[1] The Hurlbut Group filed a corrected motion for appointment as lead plaintiff and approval of selection of lead counsel and memorandum in support [32; 34] the same day it filed its original motion and memorandum in support [14; 16].

[2] Iron Workers Local 580 initially filed its motion for appointment as lead plaintiff and approval of lead counsel with Iron Workers Locals 40, 361 & 417. However, due to the recovery of Ulta's common stock after the end of the class period, Iron Workers Locals 40, 361 & 417 no longer have any losses under the PSLRA in connection with their class period purchases of Ulta's stock. [51, at 2.] Accordingly, Iron Workers Locals 40, 361 & 417 no longer seeks appointment as a lead plaintiff. *Id.* IW 580 continues to seek appointment as sole Lead Plaintiff based on its own significant financial interest in the litigation. *Id.*

the reasons set forth below, the Hurlbut Group's motion to for leave to file a sur-reply [53] is granted. The Court grants the motion [14; 32] of Lawrence Banker, Cynthia Busse, Danny Hurlbut, Marlene Hurlbut for appointment as lead plaintiffs and approves their selection of Levi & Korsinsky, LLP as lead counsel and Salas Wang LLC as liaison counsel. The Court denies the remaining motions [22; 23] for appointment as lead plaintiff. The case is set for further status on July 17, 2018 at 10:00 a.m.

## I. Background

Defendant Ulta Beauty, Inc. operates a chain of beauty stores that offers cosmetics, fragrance, skin and hair care products, and salon services to customers throughout the United States. [1, at ¶ 2.] Defendant Mary N. Dillon served at all relevant times as the Company's Chief Executive Officer and Director. *Id.* at ¶ 16. Defendant Scott M. Settersten served at all relevant times as the Company's Chief Financial Officer, Treasurer and Assistant Secretary. *Id.* at ¶ 17.

Plaintiff alleges that "Defendants made false and/or misleading statements and/or failed to disclose: (i) the Company was engaged in the widespread practice of repackaging returned cosmetics and re-shelving them alongside unblemished products to sell at full retail price, and (ii) that as a result of the foregoing, Ulta's public statements were materially false and misleading at all relevant times." *Id.* at ¶ 4. On February 9, 2018, "media outlets reported that a consumer class action had been filed against the Company, alleging that the Company engaged in the 'widespread and surreptitious' practice of repacking returned cosmetics and re-shelving them alongside unblemished products to sell at full price." *Id.* at ¶ 5. The price of Ulta's stock fell following this news. *Id.* at ¶ 6. On February 23, 2018, CBS News published a story reporting on statements made by at least one former Ulta employee indicating that Ulta store

managers pressured the Company's employees to clean and resell used products. Id. at ¶ 7. The price of Ulta's stock fell further following this news. *Id*. at ¶ 8.

On March 2, 2018, Plaintiff Barbara Chandler filed this securities class action on behalf of all persons who purchased or otherwise acquired Ulta securities between March 30, 2016 and February 23, 2018, both days inclusive, seeking to recover damages caused by Defendants' alleged violations of federal securities laws. *Id*. at ¶ 1. Pending before the Court are the motions to be appointed as lead plaintiff and for approval of counsel filed by (1) the Hurlbut Group, (2) the Ullah Group, and (3) IW 580.

## II. Legal Standard

The Private Securities Litigation Reform Act of 1995 ("PSLRA") provides guidelines for the appointment of a lead plaintiff in a securities class action case. The PSLRA requires that the Court "appoint as a lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members[.]" 15 U.S.C. § 78u–4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the "person or group of persons" who "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. 78u–4(a)(3)(B)(iii)(I)(aa); (bb); and (cc). This presumption may be rebutted, however, if a member of the purported class establishes that the "presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). The PSRLA further provides that

the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u–4(a)(3)(b)(v).

**III. Analysis**

**A. Timing of Motions**

By statute, any motions for lead plaintiff of a class action brought under the PSLRA must be made within 60 days of the Early Notice. See 15 U.S.C. §77z-1(a)(3)(A)(i)(II). The remaining movants all filed timely motions [14; 22; 23; 34] and therefore have satisfied 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). However, the IW 580 raised new arguments in its reply brief. Specifically, IW 580 dropped Iron Workers Locals 40, 361 & 417 as a proposed co-lead plaintiff, changed its loss calculation, argued that the Hurlbut Group was inadequate, and argued that the Court should appoint IW 580 because it is the only institutional investor seeking appointment. Because IW 580 raised these arguments for the first time in its reply brief, these arguments could be deemed to be waived. *Fletcher v. ZLB Behring LLC*, 2006 WL 218164, at *4 (N.D. Ill. Jan. 27, 2006). However, for the sake of completeness, the Court addresses the merits of these arguments. Accordingly, the Court grants the Hurlbut Group's motion for leave to file a sur-reply [53] and will consider the arguments raised in the Hurlbut Group's sur-reply as part of its analysis.

**B. Largest Financial Interest**

The PSLRA presumes that the most adequate plaintiff is the plaintiff who—in addition to satisfying other requirements—has the largest financial interest in the relief sought by the class. "The largest financial interest provision seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the 'most adequate

plaintiff.' The PSLRA, however, does not specify how courts should measure the largest financial interest in the relief sought by the class." *City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc.*, 2012 WL 1339678, at *3 (N.D. Ill. Apr. 18, 2012) (internal citations and quotations omitted). Most courts consider: "(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered." *Hospira, Inc.*, 2012 WL 1339678, at *4 (citing *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); see also *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) ("[W]e agree with the many district courts that have held that courts should consider, among other things: (1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." (citations omitted)).

In their initial motions, each of the remaining movants agreed that the fourth factor—the approximate losses suffered—is the most critical factor in determining a moving party's financial interest. [24, at 5; 28, at 6; 34, at 9.] This is consistent with the approach taken by most courts. See *Hospira, Inc.*, 2012 WL 1339678, at *3 ("While courts differ on the precise weight to apply to each factor, most courts agree that fourth factor—the approximate losses suffered—is the most salient factor in assessing the lead plaintiff." (citations omitted)); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("most courts simply determine which potential lead plaintiff has suffered the greatest total losses"); see also *In re CMED Sec. Litig.*, 2012 WL

5

1118302, at *3 ("In giving weight to the four factors, courts in this District, as others, place the most emphasis on the last of the four factors: the approximate losses suffered by the movant above any weight accorded to net shares purchased and net expenditures." (citations and quotations omitted)); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y. 2011) ("[W]e, as have other courts, shall place the most emphasis on the last of the four factors, the approximate loss suffered by the movant." (collecting cases)); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (finding the amount of the financial loss "the most significant" factor); *In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest").

In its opening brief and its brief in opposition, IW 580 and Iron Workers Locals 40, 361 & 417 (collectively, the "Iron Workers Group") claimed $182,958.00 in losses. The Iron Workers Group argued that even though the other two remaining movants claimed more in losses, their claimed losses were overstated. [48, at 3.] Because the Iron Workers Group was claiming more in losses than the other movants—after adjusting for the identified deficiencies—the Iron Workers Group argued that it had the greatest financial interest in the relief sought by the class.[3] However, as a result of how losses are calculated pursuant to the PSLRA, it became clear after the lead plaintiff motions were filed that the IW 40, 361 & 417 no longer had any losses in connection with its class period purchases of Ulta securities, as Ulta stock recovered after the class period ended. IW 40, 361 & 417 therefore withdrew its request to serve as lead plaintiff. [51, at 1 n.2.]

---

[3] The Iron Workers Group also argued that they should be appointed lead plaintiff because they had the most retained shares through both of the relevant corrective disclosures. [48, at 2.] However, the Iron Workers Group's argument focused on the movants' claimed losses. [*Id*. at 3-6.]

Although IW 580 continues to seek appointment as lead plaintiff, its claimed losses have decreased since it filed its lead plaintiff motion. Thus, in its reply brief, IW 580 switched course and argued that the number of retained shares is the "most determinative factor in assessing financial interest."[4] [51, at 3-4.] Because IW 580 retained the most shares through both of the corrective disclosures, it argues that is has the largest financial interest. However, the Court sees no reason to depart from the general rule that overall financial losses are the best measure of each movants' respective financial interest in the relief sought by the class.[5] In fact, the use of losses to measure overall financial interest is especially appropriate in this case. Because the value of Ulta's common stock rallied after the class period ended, movants who retained Ulta's shares did not incur as much in losses. Although retained shares might be an objective way to measure financial interest when the security at issue did not recover after the Class Period, the measure is of little relevance when the security did recover—as is the case here. The Court therefore will use each movant's losses to determine their respective financial interest in the relief sought by the class.

The remaining movants generally agree that the "LIFO" or the "last in, first out" approach is the appropriate method for calculating losses under the PSLRA. "'LIFO,' or 'last in, first out,' calculates loss by assuming that the stocks purchased most recently were sold first." *In re CMED Sec. Litig.*, 2012 WL 118302 at *3. However, the parties dispute how to properly

---

[4] In making this argument, IW 580 cites to cases indicating that the number of net shares purchased is the most relevant factor. [51, at 4.] As noted in the sur-reply filed by the Hurlbut Group, it also has the most shares purchased, net shares purchased, and net funds expended. [53-1.]

[5] Indeed, courts have rejected proposals to alter a proposed loss calculation method made after it was apparent that the proponent of the change would not have the largest financial interest under the initially proposed method. See, *e.g., Constr. Workers Pension Tr. Fund v. Navistar Int'l Corp.*, 2013 WL 3934243, at *3 (N.D. Ill. July 30, 2013) (rejecting a movant's proposal to alter the loss calculation methodology when "[i]t was only after [movant] discovered that it did not have the largest loss amount when compared to other Plaintiffs that [movant] changed its position in later filings as to the proper loss calculation").

calculate their respective LIFO losses. Both the Hurlbut Group and IW 580 argue that the Ullah group cannot claim losses from in-and-out trades that were completed before the corrective disclosure dates at issue in this case.

The Ullah Group disputes the principle that a trader cannot recover losses on stock purchases and sales that occurred prior to any corrective disclosure. However, that principle is supported by Seventh Circuit and Supreme Court cases holding that a plaintiff cannot satisfy the causation element of a securities fraud claim based on an inflated price theory relating to securities sold before the fraud was revealed. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864-65 (7th Cir. 2014) ("[T]hose class members who sold their * * * common stock before * * * the first corrective price decline[ ] cannot be said to have suffered economic loss caused by [the] alleged fraud."); see also *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."). Accordingly, the Court will exclude losses incurred prior to both of the corrective disclosure dates from the losses claimed by the Ullah Group. *Alexandre Pelletier v. Endo International PLC*, 2018 WL 3035745, at *2 (E.D. Pa. June 19, 2018) (holding that losses incurred before any disclosure could not have been caused by the any disclosures and should not be included in the "'largest financial interest' calculus"); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485 (D. Conn. 2017) (reducing claimed losses to exclude losses not plausibly tied to any partial disclosure); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) ("Therefore, when evaluating a plaintiff's financial interest for purposes of selecting a lead plaintiff, courts in this Circuit consider that plaintiff's recoverable loss, and do not take into account losses from shares sold prior to corrective disclosures." (collecting cases)).

The remaining movants have all recognized that the Hurlbut Group had more than $180,000[6] in losses. The parties have submitted a number of loss calculations for the other movants, ranging from $49,331.78 to $58,598.00 for IW 580 and ranging from $8,954.00 to $25,398.10 for the Ullah Group.[7] The Court therefore concludes that the Hurlbut Group has the greatest financial interest in the relief sought by the class.

C.     **Rule 23 Requirements**

The PSLRA further provides that the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u4(a)(3)(B)(I)(cc). Rule 23(a) provides that a party may serve as a class representative "only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The typicality and adequacy elements are the relevant factors to the appointment of a lead plaintiff. *Hospira*, 2012 WL 1339678, at *8. The Hurlbut Group has satisfied its burden by making a preliminary showing that it satisfies the requirements of Rule 23.

Under Rule 23(a), a plaintiff's claims are typical if they "arise[ ] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).

---

[6] The Hurlbut Group initially claimed $222,748.00 in losses. However, the Iron Workers argued that after accounting for gains in connection with class period transactions in Ulta securities—losses properly excluded from financial loss calculations pursuant to the PSLRA, see *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 600 (N.D. Ill. 2009)—the Hurlbut Group only incurred $180,844.00 in losses. *Id*. The Hurlbut Group does not respond to the argument, apparently conceding that these gains should be excluded.

[7] The Ullah Group does not provide a calculation of its losses excluding in-and-out trades. However, the Ullah Group does not argue that the other movants improperly calculated its losses after excluding the in-and-out claims. Instead, the Ullah Group focuses its argument on whether such in-and-out losses can be included in its loss calculation at all, apparently recognizing that it does not have the largest financial interest excluding such losses.

Here, for purposes of selecting the lead plaintiff, the Hurlbut Group's claims are based on the same legal theories and arise from the same events and course of conduct giving rise to the claims of the other class members in this case. As such, it meets the typicality requirement of Rule 23(a). See *Johnson v. Tellabs*, 214 F.R.D. 225, 228 (N.D. Ill. 2002).

The Hurlbut Group also meets the adequacy requirement in Rule 23(a). "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who be able to prosecute the litigation vigorously." *Hospira*, Inc., 2012 WL 1339678, at *8 (citing Tellabs, 214 F.R.D. at 228-29). There is no indication that the Hurlbut Group's claims conflict with those of the class. Given the Hurlbut Group's alleged losses, it has a substantial interest in the outcome of this case. Finally, the Hurlbut Group is represented by competent, experienced counsel. Because the Hurlbut Group satisfies all the criteria of 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I), it is presumed the "most adequate plaintiff" under the PSLRA.

### D. Rebuttable Presumption

The presumption established by the PSLRA "may rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C.A. § 78u-4 (a)(3)(B)(iii)(II). IW 580 argues that the Hurlbut Group is an inadequate lead plaintiff because the group includes an individual (Lawrence Banker) who does not have any pre-litigation relationship with the rest of the members in the group (Danny Hurlbut, Marlene Hurlbut, and Cynthia Hurlbut Busse), who are related.

The Seventh Circuit has not yet addressed whether and to what extent the claims of class members can be aggregated together for the purposes of determining which movant has the largest financial interest in the relief sought by the class. Although some courts have held that a group of investors must have a preexisting relationship to serve as lead plaintiff together, see, *e.g., Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845 (S.D. Ind. 1999), "the 'trend' has been to allow small groups of investors to act as lead plaintiff even if they do not have pre-existing relationships." See *Bang v. Acura Pharm., Inc.*, 2011 WL 91099, at *2 (N.D. Ill. Jan. 11, 2011) (citing *Sabbagh v. Cell Therapeutics, Inc.*, 2010 WL 3064427 at *4-5 (W.D. Wash. Aug. 2, 2010)). This trend is consistent with the Third Circuit's decision *In re Cendant Corporation Litigation*, which held that small groups of investors can aggregate their losses in computing the total loss amount and act as lead plaintiff even if they did not have any pre-existing relationship. 264 F.3d 201, 266-67 (3rd Cir. 2001). In reaching this conclusion, the Third Circuit reasoned that the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner[.]" See *id*. at 266. The Court follows the case trend and concludes that there is nothing improper about the members of the Hurlbut Group serving as lead plaintiff together.

To begin, the Hurlbut Group is small and cohesive enough to adequately control and oversee the litigation. All but one of the individuals in the Hurlbut Group are related. The members of the Hurlbut Group also submitted a joint affidavit discussing how they will monitor the litigation and work to achieve the best outcome for the possible class. [16-6.] For example, the members of the Hurlbut Group represent that they will review and discuss all pleadings, orders, and motion papers. *Id*. at ¶ 17. Furthermore, even excluding the losses associated with Mr. Banker, the Hurlbut Group still claims more losses than any other movant. [16-3, at 5.]

11

Given the significant financial losses claimed by each member of the Hurlbut Group, each can be counted on to sufficiently monitor counsel.

IW 580 also argues that even if the Court determines that another movant has a larger financial interest in the relief sought by the class, it should nonetheless be appointed lead plaintiff because the PSLRA favors institutional investors. [24, at 10.] While it is true that PSLRA was enacted—at least in part—to increase the likelihood that institutional investors would more often control securities litigation,[8] the text of the statute establishes a presumption that the most adequate plaintiff is the plaintiff with the largest financial interest in the relief sought. 15 U.S.C. 78u–4(a)(3)(B)(iii). Some courts have chosen institutional investors over individual investors when their claimed financial interests were close, *Randall v. Fifth St. Fin. Corp.*, 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016) ("As the difference among competing plaintiffs' alleged losses shrinks, so too does the persuasiveness of the presumption."), but this is not such a case. Because no party has rebutted the Hurlbut Group's presumptive lead plaintiff status, the Court grants the Hurlbut Group's motion for appointment as lead plaintiff.

E.   **Lead Counsel**

Counsel representing the parties who moved for lead plaintiff in this case are highly skilled and have extensive experience in the area of securities litigation. "The PSLRA provides that the lead plaintiffs shall, subject to Court approval, select and retain counsel to represent the class they seek to represent." *Hospira, Inc.*, 2012 WL 1339678, at *9 (citing 15 U.S.C. § 78u–4(a)(3)(B)(v)). The Hurlbut Group has selected Levi & Korsinsky, LLP as lead counsel and Salas Wang, LLC as liaison counsel. No party has challenged the Hurlbut Group's choice of

---

[8] See H.R. Conf. Rep. No. 104-369, at 34 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

counsel. Given the extensive experience of these firms in the area of securities law, the Court approves them as counsel in this case.

**IV.     Conclusion**

For the foregoing reasons, Lehigh County Employees Retirement Fund's motion to withdraw [40] is granted and its motion for appointment as lead plaintiff and approval of selection of lead counsel [19] is stricken. For the reasons set forth below, the Hurlbut Group's motion to for leave to file a sur-reply [53] is granted. The Court grants the motion [14; 32] of Lawrence Banker, Cynthia Busse, Danny Hurlbut, Marlene Hurlbut for appointment as lead plaintiffs and approves their selection of Levi & Korsinsky, LLP as lead counsel and Salas Wang LLC as liaison counsel. The Court denies the remaining motions [22; 23] for appointment as lead plaintiff. The case is set for further status on July 17, 2018 at 10:00 a.m.


Dated: June 26, 2018

_____
Robert M. Dow, Jr.
United States District Judge